Vincent F. Papalia
Mark A. Roney
**SAIBER LLC**
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932-2226
(973) 622-3333
Proposed Attorneys for Eagle Recycling Systems, Inc.
and Lieze Associates, d/b/a Eagle Recycling of NJ

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| EAGLE RECYCLING SYSTEMS, INC. et al.,[1] | (Joint Administration Pending) |
| Debtors and Debtors-in-Possession. | Case Nos. 13-18412 and 13- |

**APPLICATION IN SUPPORT OF DEBTORS' MOTION FOR THE ENTRY OF AN ORDER AUTHORIZING INTERIM AND FINAL USE OF CASH COLLATERAL**

Eagle Recycling Systems, Inc. ("Eagle Recycling") and Lieze Associates, Inc., d/b/a Eagle Recycling of NJ ("Lieze," and with Eagle Recycling collectively referred to as the "Debtors"), by and through their proposed counsel, Saiber LLC, hereby move this Court (the "Motion") for entry of an order authorizing the Debtors' interim and final use of cash collateral pursuant to sections 105, 363(c)(2)(B) and 363(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and respectfully represent as follows:

1. On April 19, 2013 (the "Petition Date"), the Debtors each filed petitions for relief under Chapter 11 of Title 11 of the Bankruptcy Code. The Debtors continue to operate their business and properties as debtors-in-possession in accordance with Sections 1107(a) and 1108 of the Bankruptcy Code.

---
[1] The proposed jointly administered Chapter 11 Debtor is Lieze Associates, Inc., d/b/a Eagle Recycling of NJ.

{00773698.DOC}

2. As set forth below, granting the Debtors the relief requested in the Motion is crucial to the Debtors' ability to operate their business and/or proceed to maximize asset values for the benefit of creditors during these Chapter 11 proceedings without interruption.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b). This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and (M).

4. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## I.   BACKGROUND

5. A detailed description of the Debtors' business and properties operations is set forth in the Declaration of Jeffrey Marangi in Support of these Chapter 11 Petition and First Day Motions (the "Marangi Declaration"), which is being filed contemporaneously with, and in support of, this Motion. The Marangi Declaration describes the Debtors' business and properties, their pre-petition financing, the events precipitating these Chapter 11 filing, and the Debtors' goals in this Chapter 11 proceeding. The Marangi Declaration is incorporated herein by this reference.

6. Comerica Bank ("Comerica") is the Debtors' primary lender having a first priority security interest in substantially all of Eagle Recycling' assets. As of April 17, 2013, the Debtors were indebted to Comerica pursuant to various notes and other financial accommodation (collectively the "Loans"), for the total amount of $6,125,312.23 comprised of the following: (i) Letter of Credit Reimbursement Obligation -- $5,333,256.88; (ii) Revolving Note -- $190,698.83; (iii) Term Note -- $486,477.45; and (iv) Installment Note -- $114,879.07. A copy of the Credit Agreement between Comerica and Eagle Recycling is attached as Exhibit A and a copy of the most recent Forbearance Agreement between Comerica and Eagle Recycling (and others) is attached as Exhibit B.

7.	The Debtors' unsecured debts approximate $6,100,000, inclusive of approximately $2,600,000 owing to the Estate of Nicholas F. Marangi, the sole shareholder of Eagle Recycling.

8.	The Debtors currently employ approximately 38 full-time employees and its payroll is approximately $22,000 per week, plus an additional $3,000 per week for two employees it "shares" with M-Land, Inc., a related party.

9.	Notwithstanding its significant obstacles and liabilities faced by these Debtors, as described in detail in the Marangi Declaration, the Debtors have put into place various measures, including critical cost reductions, including reductions in staff and landfill costs, and increased revenue sources, that have brought them from an operating loss of approximately $1.7 million in 2012 to operating profits of approximately $68,000 for the first two months of 2013, with March anticipated to continue that positive trend. However, Eagle Recycling's inability to extend its credit facilities with Comerica, and Comerica's declaration of a default and acceleration, as well as its various actions to realize upon its collateral, combined with the other significant issues and obligations described in the Marangi Declaration, necessitated this Chapter 11 filing.

10.	Prior to the Petition Date, the Debtors and their accountant, CohnReznick, undertook an analysis of the Debtors' projected financing needs during the pendency of this chapter 11 case. Based on such analysis, the Debtors determined that they could continue to operate solely on the use of "cash collateral," as that term is defined in section 363(a) of the Bankruptcy Code (the "Cash Collateral"), at least through July 20, 2013, as set forth in the Budget attached as Exhibit C hereto.

11.	The Budget includes monthly interest payments to Comerica and projects that the Debtors will be operating on a positive cash flow basis. Thus, Comerica's security interest will

3

be more than adequately protected, particularly when the value of the various collateral held by Comerica is considered. Also, the Debtors have engaged in limited discussions with Comerica regarding pre-petition consensual use of cash collateral and are hopeful that an agreement will be reached in this regard.

12. Immediate cash collateral use is especially critical for these Debtors because many of their critical vendors; such as landfills and fuel suppliers, require immediate payment. Without the ability to immediately use cash collateral, the Debtors' operations would be crippled. The Debtors' ability to finance its operations through cash collateral and the availability to the Debtors of sufficient working capital and liquidity is vital to the confidence of the Debtors' employees, vendors, and customers and to the preservation and maintenance of the going-concern value and other values of the Debtors' estate. Accordingly, the Motion should be approved.

13. By this Motion, the Debtor seeks authority to use cash collateral pursuant to sections 105, 363(c)(2)(B) and 363(e) of the Bankruptcy Code and Bankruptcy Rule 4001.

14. As set forth in the Marangi Declaration, Comerica has asserted a duly perfected first lien and security interest in substantially all Eagle Recycling's assets, including its Cash Collateral, accounts receivable, equipment, and its real property.

15. The Debtors should be authorized to use the Cash Collateral in the ordinary course of their business and in accordance with the Budget annexed hereto as Exhibit "C". As articulated in more detail in the Marangi Declaration, Comerica is adequately protected by a monthly interest payment, the fact its collateral will not be diminishing in value, the anticipated positive cash flow in the near term, and a significant equity cushion.

16. For the Debtor to have an opportunity to reorganize for the benefit of all creditors, the Debtor must be authorized to use the Cash Collateral.

## II. LEGAL AUTHORITY

17. Pursuant to section 363(a) of the Bankruptcy Code, cash collateral is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents ... " and the proceeds thereof. Pursuant to section 363(c)(2) of the Bankruptcy Code and Bankruptcy Rule 4001 (b), a debtor may not use cash collateral unless the entity that has an interest in such cash collateral consents, or until this Court authorizes the use of cash collateral after notice and a hearing, upon a finding that the interest of the secured party is adequately protected.

18. Section 363(c)(2) of the Bankruptcy Code permits this Court to allow a debtor to use cash collateral so long as the debtor provides its secured creditors with adequate protection. "Adequate protection" is not defined in the Bankruptcy Code, although section 361 of the Bankruptcy Code sets forth three non-exclusive methods of how an interest in property may be adequately protected.

19. "Adequate protection" is aptly described as "a balancing of the debtor's and a creditor's respective harm." In re Carson, 34 B.R. 502, 505 (Bankr. D. Kan. 1983) (citation omitted). The legislative history to section 361 of the Bankruptcy Code reflects Congressional intent to give the Court flexibility to fashion adequate protection in light of the facts of each case and general equitable principles. In re 5-LeafCover Corp., 6 B.R. 463, 466 (Bankr. S.D.W.Va. 1980).

20. The "interest" of a secured creditor which is entitled to be protected is the value of the secured creditor's allowed secured claim; that is, the amount of the secured creditor's claim

5

up to the value of the collateral upon which the secured creditor has a lien as of the relevant valuation date. In re Shriver, 33 B.R. 176, 181 (Bankr. N.D. Ohio 1983); In re South Village, Inc., 25 B.R. 987, 994 (Bankr. D. Utah 1982). The alleged secured creditor is only entitled to assurance that the value of its lien will not decrease as a result of the automatic stay and, if it does, that it will receive something as compensation for the decrease. In re Ramco Well Service, Inc., 32 B.R. 525, 531 (Bankr. W.D. Okla 1983). Thus, where the value of the collateral is not declining, a debtor need not do anything for the secured creditor as it is adequately protected. Id; accord, In re Price, 40 B.R. 578, 580 (Bankr. N.D. Tex. 1984).

21.    In this case, the Debtors will be able to make a monthly adequate protection payment to Comerica and Comerica's collateral will not diminish in the near term. In addition, Comerica's interest is protected by a significant equity cushion, particularly when its entire collateral package is considered.

22.    As noted, Comerica's collateral includes a mortgage on the MRF (as defined in the Marangi Declaration), which it valued at $4.9 million, accounts receivable and equipment with a book value of approximately $1.7 million, net of doubtful accounts and depreciation, respectively, and $2.5 million in a liquid securities account. Thus, Comerica is oversecured by approximately $3 million.

23.    The Debtors hereby seek interim and final use of cash collateral to preserve its assets so as to maintain and maximize their value for the benefit of all parties-in-interest.

24.    A denial of the use of Cash Collateral to fund the Debtors' day-to-day operations and restructuring costs will severely harm the Debtors at a critical time since the Debtors are without sufficient unencumbered funds to meet their ongoing operating expenses and

restructuring costs. Put simply, without the use of cash collateral the Debtors have no ability to operate, much less reorganize.

### III.  NOTICE

25.  Notice of this Motion and the proposed form of order has been provided to: (i) the Office of the United States Trustee; (ii) the Debtors' principal pre-petition lender; and (iii) each of the Debtors' twenty (20) largest unsecured creditors. In light of the nature of the relief requested herein, the Debtors submits that no other or further notice is necessary.

26.  The Debtors respectfully seek a two-part hearing process. First, pursuant to Bankruptcy Rule 4001(b)(2), the Debtors seek a preliminary hearing on the use of Cash Collateral in accordance with the Budget on less than fifteen (15) days' notice.

27.  Second, the Debtors seek a final hearing on at least fifteen (15) days' notice. At a minimum, the Debtors propose to give notice for the final hearing pursuant to Bankruptcy Rule 400l(b)(l) and (3) to the Office of the United States Trustee, all secured creditors, the twenty (20) largest unsecured creditors, any other parties claiming an interest in the Cash Collateral, and any other party who has requested notice.

### IV.  NO PRIOR REQUEST

28.  No previous motion for the relief sought herein has been made to this or to any other court.

### V.  WAIVER OF BRIEF

29.  As no novel issue of law is raised and the relevant authorities relied upon by the Debtors are set forth herein, the Debtors respectfully request that the requirement of D.N.J. LBR 9013-2 of filing a brief be waived.

WHEREFORE, the Debtors respectfully request that this Court preliminarily and finally approve the Debtors' use of Cash Collateral, pursuant to the Budget, and in the ordinary course of business, and grant such other and further relief as this Court deems just and equitable.

        **SAIBER LLC**
        Proposed Attorneys for Eagle Recycling
        Systems, Inc. and Lieze Associates, d/b/a
        Eagle Recycling of NJ, Debtors-in-Possession


        By: /s/ *Vincent F. Papalia*
             VINCENT F. PAPALIA

Dated: April 19, 2013